**Opinion filed October 20, 2016**



**In The**

# Eleventh Court of Appeals

_____

## No. 11-14-00273-CR

_____

## JOE LOUIS FUENTES, JR., Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 238th District Court**

**Midland, Texas**

**Trial Court Cause No. CR43245**

## M E M O R A N D U M   O P I N I O N

The jury convicted Joe Louis Fuentes, Jr. of the felony offense of driving while intoxicated and of the felony offense of evading arrest or detention with a vehicle. *See* TEX. PENAL CODE ANN. §§ 38.04 (evading arrest or detention), 49.04 (driving while intoxicated), 49.09(b)(2) (felony driving while intoxicated) (West Supp. 2016). Appellant pleaded true to two enhancement paragraphs as to Count One (driving while intoxicated) and to two enhancement paragraphs as to Count Two

(evading arrest). After finding the enhancement paragraphs to be true, the jury assessed Appellant's punishment at confinement for a term of forty-five years for each count. The trial court sentenced Appellant accordingly and ordered that the sentences are to run concurrently. We affirm.

Appellant's convictions are the result of a traffic stop for failing to stop at a red light. Deputy Jorge Arteaga Martinez of the Midland County Sherriff's Department testified that he observed Appellant pass through the red light at the intersection at which Deputy Martinez was stopped. Deputy Martinez initiated a traffic stop, but Appellant accelerated, "took a sharp left turn" onto another street, ran a stop sign, made two more sharp turns, and then hit a cinder block wall. Appellant jumped out of the driver's side window and ran. Deputy Martinez was able to catch him after Appellant fell to the ground.

Deputy Martinez testified that he noticed a strong odor of alcohol emitting from Appellant's person and that Appellant's speech was slurred. Another deputy transported Appellant to the Midland County Detention Center where Deputy Martinez conducted field sobriety tests and ultimately determined that Appellant was intoxicated. Deputy Martinez obtained a warrant for a blood draw, and the test results showed that Appellant's blood alcohol concentration was 0.141.

Appellant presents two issues for our review. In his first issue, Appellant asserts that the trial court committed reversible error when it prohibited Appellant from presenting evidence relevant to his defense. Specifically, Appellant contends that the trial court should have allowed him to play the audio portion of a video recording that the State had already played for the jury but had played without audio. The recording at issue depicted the field sobriety tests performed by Appellant and conducted by Deputy Martinez at the Midland County Detention Center.

Prior to trial, defense counsel informed the trial court that the conversation between the arresting officer and Appellant was in Spanish. Defense counsel

represented that he wanted to introduce the audio portion of the recording at trial because it contained exculpatory evidence. Because the conversation was in Spanish, he requested the court to appoint an interpreter. The prosecutor responded that he had planned to just mute the audio. He said, "I'm not aware of any exculpatory evidence in it, but I don't speak Spanish, so I don't know what they're saying for the most part." The prosecutor also said that the State would not object to the use of a certified and reliable interpreter to introduce portions of the video. However, the State did not believe that it was the trial court's responsibility to appoint an interpreter. Instead, the State represented that Appellant was responsible for securing an interpreter if the defense wanted to introduce the audio portion of the video. The State noted that Appellant retained his defense counsel and, thus, was not indigent.

The trial court denied Appellant's request for the trial court to appoint an interpreter and told Appellant that he needed to get his own witness to translate the audio portion of the video if he wanted to offer it at trial. The trial court based its ruling, in part, on the fact that Appellant could read and write the English language and would not need an interpreter for any other portion of the trial.

When the State offered the video during trial, defense counsel objected to the State removing the audio portion of the video and contended that removing the audio was destruction of evidence. He contended that the State could not tamper with evidence and that the prosecutor should just play it as it was even if the conversation was in Spanish. The trial court overruled Appellant's objection and again told the parties that the court could not play an exhibit in Spanish.

During defense counsel's cross-examination of Deputy Martinez, he offered the video and audio content of the recording. The State objected on the grounds that the recording had not been properly authenticated and that it was inadmissible unless it was accompanied by a translation of the Spanish words spoken on the recording.

The trial court gave defense counsel an opportunity to lay the proper predicate, but defense counsel failed to do so. Deputy Martinez testified that he had not seen the specific DVD that defense counsel represented was a video and audio recording of the field sobriety tests. He acknowledged that he had reviewed both the audio and video portions of the State's recording, but he did not testify that he had reviewed the specific copy of the recording that defense counsel was offering into evidence. Because defense counsel was unable to authenticate the recording, the trial court sustained the State's objection and excluded the recording. The trial court told defense counsel that he could question Deputy Martinez about the conversation.

Deputy Martinez agreed that what was said between himself and Appellant was extremely important for the jury to consider. Deputy Martinez testified that Appellant was able to understand his instructions, was able to walk into the "sally port" of the detention center, was not swaying, and "did okay" on the walk-and-turn test.

Subsequently, defense counsel attempted to make a bill of exception regarding the audio portion of the recording. The State objected to defense counsel's exhibit on the grounds that it was in an improper format and that it contained other recordings besides the recording of the field sobriety tests. The parties again discussed the issue of the conversation being spoken in Spanish. Defense counsel explained that he was not only trying to show what was said but was also trying to show how it was said and how Appellant had not lost the use of his mental or physical faculties by the way that he was interacting with the deputy. The parties and the trial court discussed the possibility of a limiting instruction, but the court denied Appellant's request to conditionally admit the exhibit and Appellant's request to admit the exhibit as part of his bill of exception because it contained other recordings and was in the wrong format; it was not an MP3 or MP4. The trial court told defense counsel, "It's got to be this one thing in MP3, MP4 format, and then it

can be. Because the Court of Appeals cannot review it unless it's in that format." Defense counsel represented that he would convert the recording to the proper format.

Although defense counsel later informed the trial court that he had converted the exhibit to an MP3, he never offered it again for purposes of his bill of exception. Instead, he informed the trial court that he would like to recall Deputy Martinez and impeach Deputy Martinez by showing that Deputy Martinez testified incorrectly as to how many beers Appellant told Deputy Martinez that Appellant had consumed. The trial court did not allow defense counsel to play the audio in front of the jury but did allow defense counsel to play the audio for Deputy Martinez. Defense counsel then recalled Deputy Martinez to ask him how many beers Appellant told him that Appellant had consumed that night. Deputy Martinez had previously testified that Appellant said that he had consumed five beers on the night in question, but after reviewing the recording, Deputy Martinez testified that Appellant actually said that he had "[o]ne, two, three beers."

To determine whether the trial court erred when it denied Appellant's request to play the audio portion of the video, we would first need to decide whether it was the trial court's responsibility to provide an interpreter to translate the Spanish conversation. However, even if we found that Appellant made a proper request for an interpreter and even if we found that it was the trial court's responsibility to provide an interpreter, we cannot say that the trial court's failure to provide an interpreter constituted reversible error in this case.

Defense counsel represented that it wanted to play the audio portion of the recording to show that Appellant had not lost the use of his mental or physical faculties. While we agree that the audio portion of such a recording could assist the jury in deciding whether Appellant was intoxicated, the jury charge in this case allowed the jury to convict Appellant if it found that Appellant did not have the

5

normal use of his mental or physical faculties *or* if it found that Appellant had a blood alcohol concentration of 0.08 or more. Thus, even if the audio portion of the video contained exculpatory evidence, the exculpatory evidence would be related to whether Appellant had the normal use of his faculties, not whether he had a blood alcohol concentration above the legal limit.

Here, the evidence showed that Appellant had a blood alcohol concentration of 0.141, almost twice the legal limit of 0.08. Defense counsel attempted to discredit the reliability of the test results by showing that it was impossible for Appellant to have a 0.141 blood alcohol concentration when he consumed only two beers and by showing that the blood was not properly refrigerated before testing. When asked about the amount of alcohol a person would have to consume to elevate the person's blood alcohol concentration to 0.141, the forensic scientist who analyzed Appellant's blood testified that it would take approximately ten beers; two or three beers, even quickly consumed, would not elevate a person's blood alcohol concentration to 0.141. She further testified that blood loses alcohol at room temperature. Therefore, the fact that the blood may not have been properly refrigerated may have lowered the test results in Appellant's case. Although the jury necessarily rejected Appellant's defense as it related to the results of the blood draw, Appellant was not prohibited from presenting a defense to the State's allegation that he had a blood alcohol concentration of 0.08 or more.

Furthermore, Appellant elected to testify in this case, and he provided an explanation to the jury as to why he was unable to stop at the intersection and as to why he initially fled from Deputy Martinez. Appellant explained that the brakes on his pickup were not working and, thus, he was unable to stop. He further explained that he initially ran from Deputy Martinez because he panicked. Appellant also testified that he consumed only two beers with his dinner on the evening in question and that he did not have any drugs in his system. Although Appellant did not explain

6

the contents of the conversation with Deputy Martinez, defense counsel could have asked him what he said in the video if indeed it was contrary to what Deputy Martinez told the jury. In fact, defense counsel did recall Deputy Martinez to ask him again how many beers Appellant said he had that night, and Deputy Martinez changed his prior testimony—in which Deputy Martinez had testified that Appellant told him that he had consumed five beers—to reflect that Appellant actually said he had "[o]ne, two, three beers." Defense counsel did not ask Deputy Martinez about any other statements that Appellant made during the field sobriety tests, nor did defense counsel represent to the trial court or to this court that Deputy Martinez misrepresented any other portion of the conversation.

Because defense counsel was not prohibited from presenting a defense and because the jury could have convicted Appellant based on the results of the blood draw, we find beyond a reasonable doubt that the trial court's alleged error did not contribute to the conviction or punishment in this case. *See* TEX. R. APP. P. 44.2(a). Appellant's first issue is overruled.

Appellant argues in his second issue that the trial court committed reversible error when it failed to conduct a hearing on his motion for new trial in which he alleged several instances of ineffective assistance of counsel. The State responds that Appellant failed to present his motion for new trial to the trial court in a timely manner and that, therefore, the trial court did not abuse its discretion when it did not conduct a hearing on the motion. We agree that Appellant failed to properly present his motion to the trial court.

Appellant was required to present his motion for new trial within ten days of filing the motion in order to obtain a hearing on the motion. *See* TEX. R. APP. P. 21.6; *Stokes v. State*, 277 S.W.3d 20, 21 (Tex. Crim. App. 2009). "The purpose of the presentment rule is 'to put the trial court on actual notice that a defendant desires the trial court to take some action on the motion for new trial such as a ruling or a hearing

7

on it.'" *Stokes*, 277 S.W.3d at 21 (quoting *Carranza v. State*, 960 S.W.2d 76, 78 (Tex. Crim. App. 1998)). Therefore, the record must show that Appellant actually delivered the motion for new trial to the trial court or must show that Appellant otherwise brought the motion to the trial court's attention so that the trial court had actual notice of the motion. *Id.* at 21–22.

Appellant filed his motion on October 3, 2014; his sentences were imposed on September 5, 2014. He attached four affidavits and one letter in support of his motion for new trial. The motion was filed within thirty days of the imposition of his sentences, as is required by Rule 21.4, and Appellant specifically requested that the trial court set a hearing on the motion. *See* TEX. R. APP. P. 21.4(a).

On November 17, 2014, Appellant filed a brief in support of his motion for new trial. In his brief in support of his motion, Appellant claimed that the trial court was personally presented with a "Certificate of Presentment" and with a proposed order to set a hearing but that the trial court did not acknowledge either document. To support his claim, Appellant attached an affidavit by Kenna Rhind, a paralegal who assisted on his case, in which she stated that she took the Certificate of Presentment and the proposed order to the court on October 15, 2014. According to Rhind's affidavit, the court was closed for Columbus Day on October 13, 2014, and was closed on October 14 to honor a police officer who was killed in the line of duty. Rhind further stated that the trial court was conducting a jury trial on October 15 but that Rhind left the documents with the court coordinator, who told her that she would give the documents to the trial court later that day. The documents were placed with the clerk's record but were never filed, nor were they signed or acknowledged by the trial court. On each document is a single line that runs through the body of the document from the top right to the bottom left, like a partial "X." There are no other notations on the documents.

The State filed a response to Appellant's motion for new trial and claimed that Appellant's brief in support was untimely filed and that Rhind's affidavit should not be considered. The State also alleged that Rhind was incorrect that the courthouse was closed on October 13, which was the last day to meet the requirement that the motion be presented within ten days of filing. Attached to the State's response is an affidavit by Ross Bush, the district clerk of Midland County, in which Bush stated that the courthouse was not closed in observance of Columbus Day on October 13 and that the courthouse was open for business on that day.

Rule 21.4 provides that an amended motion for new trial must be filed within thirty days of the imposition of the defendant's sentence and before the court overrules a previously filed motion for new trial. TEX. R. APP. P. 21.4(b). Therefore, if we were to treat Appellant's brief in support of his motion as an amended motion, it would be untimely as it was filed on November 17, well after the thirty-day window from September 5. Even if we were to consider the brief in support and take Rhind's statements that the courthouse was closed on October 13 and October 14 as true, Rhind's affidavit is not sufficient to show that the motion for new trial was actually presented to the trial court or the court coordinator.

The presentment requirement can be satisfied by presenting the motion to the court coordinator; however, the court coordinator must do something to acknowledge receipt of the motion, such as set a hearing or make a notation on a court-generated document. *E.g.*, *Castro v. State*, No. 03-12-00730-CR, 2015 WL 1214402, at *4–5 (Tex. App.—Austin Mar. 13, 2015, pet. ref'd) (mem. op., not designated for publication) (detailing multiple cases regarding when record is sufficient to show presentment to court staff). Here, the record does not contain any act on the part of the trial court or its court coordinator to show that either received the motion for new trial. Although Rhind stated that she gave the documents to the court coordinator, the record does not show whether the coordinator presented the

9

documents to the trial court, nor does it show that the court coordinator scheduled a hearing. The documents are not signed or acknowledged by the trial court or the court coordinator, and the trial court did not rule on the request for a hearing. Instead, the motion was overruled by operation of law on November 19. *See* TEX. R. APP. P. 21.8.

Because the record does not sufficiently show that Appellant delivered or otherwise brought his motion to the attention of the trial court, we cannot say that the trial court erred when it failed to hold a hearing on Appellant's motion for new trial. Appellant's second issue is overruled.

We affirm the judgment of the trial court in each count.

JIM R. WRIGHT
CHIEF JUSTICE

October 20, 2016

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.